Greco, J.
This is a summary process action in which judgment was entered for the plaintiff-landlord. No money damages were awarded to the landlord, and the defendant-tenant’s counterclaims were dismissed. The tenant filed this Dist/Mun. Cts. R.A.D.A, Rule 8C, appeal of the court’s award of possession to the landlord and of the courts denial of the tenants requests for rulings of law that the evidence warranted findings in his favor on his defenses and counterclaims for breach of the warranty of habitability, breach of his right to quiet enjoyment retaliatory eviction and violations of the Consumer Protection Act, G.L.c. 93A.
The landlord terminated the defendants tenancy at will as of December 29,2001. The tenants rent was paid through December 29,2001, and the landlord sought in this action to recover damages for use and occupancy in the amount of $400.00 thereafter. Because this was an attempted termination without fault and because it was agreed that a timely notice to quit was filed, the trial proceeded on the tenant’s defenses and counterclaims. The tenant moved into the premises (a former motel) on October 29, 1999. He lived first in Unit No. 3 and moved to Unit No. 18 on May 29,2000. While in No. 18, the tenant complained at various times that the accumulation of steam from taking a shower set off the smoke detector; that the smoke detector generally was too sensitive and, therefore, went off too frequently; that the bathroom door was too tight and scraped the floor when being opened and closed; that the bathroom fan did not “sound right”; that the shower drain became blocked; *221 and that tiles on the kitchen floor loosened and “popped out” The landlord took some steps to address these complaints. Months before the notice to quit, the landlord fixed the shower drain by pouring in a drain cleaner and plunging it The landlord replaced the loose tiles, but others began “to deteriorate” after he did so. The sensor in the smoke detector and the fan unit in the bathroom were also replaced.
Sometime after the tenant received the notice to quit he asked the local board of health to inspect the unit The resulting report by the board’s agent listed some of the matters discussed above as violations of the State Sanitary Code’s “Minimum Standards of Fitness for Human Habitation.” The report did not however, designate which specific sections of the Code were involved. After re-inspection, the agent noted that five “[violations [had] not been corrected.” In addition to the tile and scraping door problems, the other listed violations were that the bottom of a metal cabinet which sat directly on the kitchen floor, was “rusting and discoloring the floor”; that paint “was peeling off the floor of the shower stall”; and that the floor covering was applied “with poor workmanship” in that there were “gaps between the tiles of one-eighth inch... or larger.”
With respect to the claim of retaliatory eviction, there was evidence at trial that on May 4,2001, the tenant complained in writing to the landlord about the shower drain and loose tiles. The landlord responded by letter dated May 7,2001 that he was able to fix the drain with a plunger, that a plunger would be available in the laundry room if the problem arose again, and that an easy chair in the tenant’s kitchen was causing the tiles to loosen. The landlord closed his letter with the following: “Dana, it is evident to me that our facilities here are not going to be adequate for your needs. Rather than having ongoing repeated problems I believe it would be best for you to look for accommodations elsewhere.” For the next six months, the tenant remained on the premises and the landlord took no action to terminate the tenancy. On November 3, 2001, the landlord sent the tenant a letter which notified him that several other tenants had complained that his smoke alarm had gone off late at night and which requested a “written explanation.” In response, the tenant vehemently denied having anything to do with the alarm going off Many parts of his letter were highlighted with single, double and triple underlines as well as multiple exclamation points. The landlord wrote back, characterizing the tenant’s response as “not acceptable” and “full of anger.” The landlord went on to state: “I am requesting you compose another letter using a more moderate tone. If not then please vacate the apartment You are a tenant at will — both yours and mine. Either we communicate well or we don’t communicate at all.” He ended his letter by explaining that the control panel indicated that the tenant’s smoke detector was “tripping” the fire alarm, and that he needed to know if the detector was defective since it would cost $175.00 to replace it After this exchange came the notice to quit (November 12th), the inspection by the board of health (December 3rd), the health agents first report (December 11th) and the re-inspection report (January 24th).
All of the tenant’s claims on litis appeal focus on the denial of his “warrant requests.” Four years ago, this Division noted that
[i]t should be ... axiomatic that a warrant request raises the single, straightforward issue of the legal sufficiency of the evidence to permit a finding in favor of the requesting party.... [WJhere there is any evidence, anywhere in the record, which would support a finding for the requesting party, a warrant request must be allowed, irrespective of the judge’s assessment of the credibility of such evidence.
Canty v. Arbella Mut. Ins. Co., 1998 Mass. App. Div. 32, 34. No matter what a judge thinks about the merits of the case, he or she will rarely err by allowing such a request Denial, in most cases, invites reversal on appeal.
The tenant’s warrant requests on the issue of retaliatory eviction were properly denied because a finding for the tenant would not have been permitted on any *222 view of the evidence. Section 18 of G.L.c. 186 imposes liability on a landlord who takes or threatens to take reprisals against a tenant for having done specifically enumerated acts, including the report of “a violation or a suspected violation of any health or building code” to the local board of health and the complaint or report of such a violation “in writing to the landlord.” The tenant contends herein that his response to the landlord’s letter of November 3, 2001 qualified as the required report or complaint The trial judge would not have been warranted in so finding. The landlord’s letter asked the tenant to explain why his smoke alarm had gone off. In his response, the tenant denied that it had, and pointed the blame elsewhere. Nothing in that response could be construed as a complaint of a code violation. To the extent that it was a complaint of anything, it was that, in the tenant’s own words, “a mistake... [in] reading who set off the alarm” had been made.
Conversely, while the evidence of violations of G.L.c. 239, §8A, G.L.C. 186, §14 or G.L.c. 93A, §2 was far from compelling, it could not be ruled as a matter of law that the evidence did not permit findings for the tenant See Manzaro v. McCann, 401 Mass. 880, 885 (1988) (“The ringing for a day of an alarm which... was adequate to alert a sleeping tenant in the event of fire cannot be said as a matter of law never to be sufficient interference to justify relief under [G.L.c. 186,] §14.”). See also Spaulding v. Young, 32 Mass. App. Ct. 624 (1992), where the Appeals Court noted “that ‘[t]here may be instances where conditions not covered by the [State Sanitary or Building Code] render the apartment uninhabitable.’... In those instances, the feet finder is given “broad discretion to determine whether there is a material breach.’” Id. at 628, quoting from Boston Hous. Authority v. Hemingway, 363 Mass. 184, 200 n.16 (1973).
Accordingly, the trial court’s judgmentfor the plaintiff for possession is vacated, and the case is returned to the Woburn Division for a new trial on the complaint and on the counterclaims alleging violations of the warranty of habitability, the right of quiet enjoyment, and Chapter 93A The order dismissing the counterclaim for retaliatory eviction is affirmed.
So ordered.